# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JOEL I. SHER
Chapter 11 Trustee for TMST, Inc.
f/k/a Thornburg Mortgage, Inc.

      Plaintiff

    v.                    Civil No. – ELH-11-01982

BARCLAYS CAPITAL, INC.

      Defendant

\*\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiff, Joel I. Sher, Chapter 11 Trustee ("Trustee") for TMST, Inc., f/k/a Thornburg Mortgage, Inc. ("TMST"), has filed suit against Barclays Capital, Inc. ("BarCap" or "Barclays"), defendant, in two counts: "Breach of Contract" (Count I) and "Breach of the Covenants of Good Faith and Fair Dealing" (Count II). TMST alleges, *inter alia,* that BarCap issued erroneous and improper margin calls and wrongfully seized investment-grade, mortgage-backed securities that TMST financed through BarCap. *See* "Trustees' Complaint For Damages" ("Complaint," ECF 7) ¶ 1.[1] According to plaintiff, the margin calls were based on "inappropriately low valuations of TMST's MBS," and "Barclays refused, in bad faith, to discuss TMST's legitimate challenges to [BarCap's] valuations. . . ." *Id.* As a result of Barclays' conduct, including its allegedly improper disposition of the assets, TMST allegedly sustained crippling economic losses.

Now pending before the Court is the "Motion Of Barclays, Inc. To Dismiss Plaintiff's

---

[1] The matter was initially filed as an adversary proceeding in the United States Bankruptcy Court for the District of Maryland. *See* Adv. Proc. 11-00329-DWK. On August 1, 2011, this Court issued an Order (ECF 4), granting the unopposed "Motion of Barclays Capital, Inc. For withdrawal Of Reference Of Adversary Proceeding" (ECF 1).

Complaint" ("Motion," ECF 18), along with a "Memorandum of Law In Support of Defendant Barclays Capital[,] Inc.'s Motion To Dismiss Plaintiff's Complaint" ("Motion Memo," ECF 19), to which Barclays has appended eleven exhibits. After plaintiff filed an opposition to the Motion, *see* "Memorandum Of Law In Opposition To Defendant Barclay's, Inc.'s Motion To Dismiss Plaintiff's Complaint" ("Opposition," ECF 21), Barclays submitted a reply. *See* "Reply Brief In Further Support Of Defendant Barclays Capital[,] Inc.'s Motion To Dismiss Plaintiff's Complaint" ("Reply," ECF 26). The matter has been fully briefed and is ripe for decision. No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons that follow, I will deny the Motion, in part, and grant the Motion, in part.

## Factual Background[2]

TMST was a real estate investment trust that invested in adjustable-rate residential mortgages ("ARM") and mortgage-backed securities ("MBS"). TMST generated its earnings from the spread between the interest income it earned on its assets, such as MBS, and the cost of borrowing to acquire and own them. *See* Complaint ¶ 10; Motion Memo at 2. TMST obtained financing, *inter alia*, through reverse repurchase agreements. On June 15, 2005, Barclays and TMST entered into a standard form Master Repurchase Agreement ("MRA"), an umbrella contract governing anticipated "repo transactions" between the parties. Complaint ¶¶ 13-14. The MRA is attached to the Complaint as Exhibit 1.

According to plaintiff, "individual repo transactions are memorialized by written confirmation and trade tickets (the Trade Confirmations) specifying the purchased securities and setting the purchase date, purchase price, repurchase date, pricing rate, or repurchase price. . . ."

---

[2] Given the posture of the case, the facts are gleaned primarily from the allegations in the Complaint.

Complaint ¶ 14 (citing MRA ¶ 3(b)). Plaintiff refers to the MRA, together with the approved Trade Confirmations, as the "Repurchase Agreements." *Id.*

Under the MRA, either party could, "at any time," make a margin call on the other party, "if the market value of the securities serving as collateral became less than or exceeded the margin amount." Complaint ¶ 16 (citing MRA ¶ 4). Therefore, Barclays could issue a margin call "if the market value of the pledged MBS diminished beyond a certain agreed-to level," i.e., diminished below the margin amount. Complaint ¶ 16. Pursuant to the terms of the MRA, TMST could meet a margin call by transferring cash or collateral to BarCap. Complaint ¶ 18.[3] In general, if the borrower failed to meet a margin call, the lender could declare an Event of Default, triggering various contractual remedies. As relevant here, upon declaring a default, Barclays could either liquidate the collateral and/or take the pledged securities into its own inventory, giving TMST credit for the value of the collateral. Complaint ¶ 19.

The Trustee avers that, beginning in early August 2007, "TMST had seven Repo transactions outstanding with Barclays, pursuant to which TMST had financed thirteen separate MBS with Barclays." Complaint ¶ 20. According to plaintiff, the thirteen securities had an aggregate value of about $2.7 billion. *Id.* Between August 2, 2007, and August 14, 2007, Barclays issued a series of disputed margin calls to TMST, spawned by the liquidity crisis in mid 2007, when the sub-prime mortgage sector was in a state of turmoil. Complaint ¶ 1.

In response to a revised margin call of August 2, 2007, TMST posted $40.7 million, in cash, on August 3, 2007, which satisfied a revised margin call issued by Barclays one day earlier. Complaint ¶ 22. Other margin calls followed on August 6, 2007, August 7, 2007, August 8,

---

[3] Similarly, TMST could issue a reverse margin call in the event that the market value of the pledged MBS exceeded the margin amount.

2007, August 10, 2007, and August 13, 2007. As discussed below, Barclays' last margin call occurred on August 14, 2007. *Id.* ¶¶ 23, 25, 28, 29.

Plaintiff maintains that Barclays refused, "in bad faith," to discuss TMST's repeated, legitimate challenges to Barclays' valuations of TMST's collateral. Complaint ¶ 2. In particular, plaintiff claims that "Barclays had grossly undervalued TMST's collateral . . . ." *Id.* ¶ 26. According to the Trustee, the undervaluation of TMST's collateral was "due to mark-to-market errors, interest errors, and factoring errors." Complaint ¶ 25. In the Trustee's view, because "there was no margin deficit," there was no basis for the margin calls. *Id.*

On August 14, 2007, at 9:46 a.m. Eastern time, Barclays issued its final margin call; it was in the amount of $25 million. Complaint ¶ 29. According to the Trustee, TMST had "at least until the close of business that day to meet the margin call." *Id.* However, plaintiff contends that Barclays failed to provide TMST with the requisite time prescribed by the MRA. *Id.* Instead, asserts plaintiff, Barclays issued a premature "Notice of Default," claiming that TMST failed to satisfy ¶ 4 of the MRA, without "allowing TMST the contractually mandated time to contest or meet the call. . . ." *Id.* ¶ 29.[4] According to plaintiff, "Barclays had, in effect and without justification, declared all $2.7 billion in outstanding Repo transactions between it and TMST immediately due and payable." Complaint ¶ 30.[5]

Thereafter, Barclays sold ten of the thirteen MBS assets and kept three for its own account. *Id.* ¶ 33. By letter to TMST dated August 23, 2007, Barclays claimed a deficiency of

---

[4] Barclays contends that the margin call of August 14, 2007, did not supersede earlier, unsatisfied margin calls of August 10 and August 13, and thus the disputed Notice of Default was entirely proper under the terms of the MRA. Reply at 7.

[5] Plaintiff also complains that the Notice of Default did not identify the margin call that TMST "had purportedly failed to meet. . . ." *Id.* ¶ 30.

$59.5 million resulting from the liquidation of the MBS, and $18.7 million in unspecified fees. *Id.* According to the Trustee, after applying the $68.3 million of cash and securities that TMST had posted to satisfy Barclays' earlier margin calls, Barclays contended that TMST still owed approximately $9.9 million as a "'Closeout Deficit.'" *Id.* Following a protest by TNST, Barclays revised the "'Closeout Deficit'" set forth in its letter of August 23, 2007. In a letter of September 4, 2007, Barclays paid TMST "a net excess" of "approximately $4.4 million. . . ." Complaint ¶ 39.

In addition to the claim that BarCap repeatedly issued improper margin calls, and improperly declared a default, plaintiff contends that Barclays did not use commercially reasonable methods to liquidate the securities, and recovered "some $66.2 million less than the value Barclays itself attributed to those same securities on August 14, 2007," when Barclays improperly declared a default. Complaint ¶ 36. In particular, the Trustee avers that Barclays failed to sell the MBS assets in a recognized market, and obtained "egregiously low prices." Complaint ¶¶ 2, 37.

Further, the Trustee complains that Barclays unreasonably refused TMST's proposal to permit Bear Stearns to assume Barclays' position. Plaintiff alleges that approval of the transaction by Bear Stearns' executive committee was "'imminent,'" Complaint ¶ 31, and that this substitution "would have satisfied Barclays in full and preserved TMST's interest in those MBS." Complaint ¶ 1; *see id.*, ¶¶ 27, 31, 32.

On May 1, 2009, almost two years after the underlying events, TMST (together with related debtors), filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Maryland, under Chapter 11 of the Bankruptcy Code. The instant suit was filed on

5

April 28, 2011.

## DISCUSSION

### I.

Barclays' Motion is predicated upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. Relying, *inter alia,* on *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), Barclays maintains that TMST has failed to state a claim for relief. Motion Memo. at 3.

BarCap complains that the suit alleges "in a conclusory fashion" that it "committed wrongdoing and acted in bad faith. . . ." Motion Memo. at 2. In Barclays view, the Complaint merely "reflects TMST's simple disagreement over [Barclays] valuation of TMST's collateral." *Id.* If Barclays valuations were correct, asserts defendant, then "TMST's claims fail in their entirety," because defendant's conduct would then have been authorized by the terms of the MRA. *Id.* Barclays states: "Accordingly, whether any part of the Complaint can survive boils down to whether the Complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' based on [Barclays] valuation of TMST's collateral. . . . It plainly does not." *Id.* at 2-3 (citations and some quotation marks omitted).

Further, Barclays insists that TMST has failed to "allege facts establishing that the parties did not agree upon a 'generally recognized source,'" or that Barclays "obtained prices from a source other than a generally recognized or agreed one." Motion Memo at 3. "That failure is significant," contends Barclays, because the MRA states that "'the Securities subject to any Transaction hereunder are instruments traded *in a recognized market*,' (MRA ¶ 11(d)), thereby acknowledging that there were multiple acceptable sources of prices for purposes of calculating

6

margin." *Id.* According to Barclays, TMST has not alleged that defendant "failed to utilize such a source." *Id.*

Claiming that the MRA makes plain that BarCap did not have the contractual obligations that plaintiff articulates in the Complaint, *id.* at 12, defendant insists that the various breach of contract allegations "cannot pass muster under any circumstances, because they are legally unsupportable in light of the plain meaning of the contract." *Id.* at 3. For example, it maintains that "BarCap had no [contractual] obligation to consider" approval of a transaction involving Bear Stearns, "and, in any event, TMST affirmatively pleads that even Bear Stearns itself had not approved such a transaction at the relevant time." Motion Memo at 4.

With respect to the breach of contract claim, Barclays urges, alternatively, that the Court should "limit the case to an assessment of whether BarCap's margin valuations and margin calls were consistent with the [MRA]." Motion Memo at 19. It reasons that, if defendant's "margin calculations were consistent with the [MRA], then the remaining actions it took were expressly authorized by the [MRA] and any assertion of breach of contract must fail." *Id.*

Noting that the MRA is governed by the laws of the State of New York, Barclays also contends that New York law does not recognize a separate cause of action for breach of the implied covenants of good faith and fair dealing when, as here, such a claim is duplicative of a breach of contract claim. Therefore, it maintains that Count II cannot survive the Motion. *See* Motion Memo at 20-25.

Plaintiff counters that the Trustee "has pleaded facts that are more than sufficient to meet the minimal standard necessary to survive a motion to dismiss." Opposition at 7. The Trustee insists that, under the MRA, Barclays "could not . . . issue a margin call in the absence of a valid

Margin Deficit; nor could Barclays declare a Notice of Default on the basis of TMST's failure to meet an invalid margin call." *Id.* at 5. As to the covenants of good faith and fair dealing, the Trustee contends that such a claim was properly pleaded by, "among other things," the allegation that Barclays "reject[ed], for no stated reason, the Bear Stearns proposal . . . that would have made Barclays whole," and would have avoided a sale of TMST's securities "at a substantial loss." *Id.* at 13.[6]

## II.

Suit is premised on a dispute as to whether Barclays' asset valuations, margin calls, Notice of Default, and liquidation of assets complied with the MRA. As Barclays puts it, if the margin calls complied with the MRA, "the Complaint evaporates, because the Repurchase Agreement expressly authorizes BarCap to take the other steps" about which the Trustee complains. Motion Memo at 11.

Barclays' Motion is founded on Fed. R. Civ. P. 12(b)(6). Such a motion tests the sufficiency of the Complaint. *See German v. Fox*, 267 F. App'x. 231, 233 (4th Cir. 2008); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the complaint, as well as documents attached to it that are "integral" to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. . . .") (citation omitted).

---

[6] In its Reply, BarCap asserts that it had no obligation "to assent to a chimerical offer of assignment . . . ," Reply at 2, and notes that "the contract expressly forbids assignment without mutual consent of the parties." *Id.*

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The purpose of the rule is to provide the defendant with "fair notice" of the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests") (internal quotation marks omitted). To that end, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. That showing must consist of more than "naked assertion[s] devoid of further factual enhancement." *Iqbal,* 129 St. Ct. at 1949 (internal citations omitted).

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1940; *see Twombly*, 550 U.S. at 555 (the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Moreover, "'the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Simmons*, 634 F.3d at 768 (quoting *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385, 86 (4th Cir. 2009)) (quotation marks and alternation marks omitted in *Simmons*); *see A Society Without A Name v. Virginia,* ____ F.3d ____, No. 10-1437, 2011 WL 3690000, at *2 (4th Cir. Aug. 24, 2011) ("A court decides whether [a claim has been stated] by separating the legal conclusions from the factual allegations . . . and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" (citation omitted)).

Dismissal of a lawsuit is mandated if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see E.I. Du Pont de Nemours and Co. v. Kolan Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Simmons v. United Mort. And Loan Inv., LLC,* 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). As the Supreme Court said in *Iqbal*, 129 S.Ct. at 1949, "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See also Twombly*, 550 U.S. at 556.

However, and of import here, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, the court must assume the truth of the factual allegations and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Notably, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, 468 U.S. 183 (1984). As the Supreme Court said in *Twombly*, 550 U.S. at 556, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."

With this standard in mind, I have reviewed the claims articulated in the Complaint and the parties' memoranda. As to the breach of contract claim, it may be that, ultimately, the arguments advanced by Barclays prove to be meritorious. But, I am persuaded that the

Complaint does not fail to state a claim, and a factual record must be developed before addressing the issues raised in the Motion. Therefore, Barclays' Motion is denied with respect to the breach of contract claim (Count I).

The claim for breach of the covenants of good faith and fair dealing presents a thornier issue.

The parties agree that New York law governs the MRA. *See* Plaintiff's Exhibit 1, ¶ 16 ("This Agreement shall be governed by the laws of the State of New York. . . .") (ECF 7-1). Defendant argues vigorously that, under New York law, there is no distinct cause of action for breach of the implied covenants of good faith and fair dealing.

In *Harris v. Provident Life and Accident Insurance Co.,* 310 F.3d 73, 81 (2nd Cir. 2002), the Court of Appeals for the Second Circuit said: "New York law . . . does not recognize a separate cause of action for breach of the implied covenant . . . when a breach of contract claim, based on the same facts, is also pled." According to Barclays, TMST's claim as to good faith and fair dealing "is predicated on the same conduct as its breach of contract claim and therefore should be dismissed as duplicative." Motion Memo at 20. As Barclays puts it, the factual predicates in Count II "are nothing more than slightly rephrased versions of the conduct that underpins the breach of contract claim." *Id.*

According to plaintiffs, the Complaint alleges that, in addition to breaching its express obligations under the terms of the MRA, Barclays breached its duty to act in good faith by, *inter alia,* "'using improper and unconventional methods for assigning values to TMST's MBS as a means of generating false margin deficits'"; "'failing to agree on a third-party source to provide independent values for TMST's MBS when TMST disputed Barclays' August 13, 2007 margin

11

call'"; "engaging in self-dealing to obtain arbitrary and artificially low prices for TMST's securities that Barclays decided to retain for itself, and by rejecting, for no stated reason, the Bear Stearns proposal to take over TMST's [position] with Barclays that would have made Barclays whole and instead selling TMST's securities at a substantial loss." Opposition at 13 (citing Complaint ¶ 49). The Trustee adds that the covenant of fair dealing "includes a promise not to act arbitrarily or irrationally in exercising discretion" afforded under a contract. Opposition at 13-14.

In support of its position, plaintiff relies primarily on two cases: *MBIA Insurance Corp. v. Countrywide Home Loans, Inc., et al.*, No. 602825/08, 2009 N.Y. Misc. Lexis 6042, 2009 WL 2135167 (N.Y. Sup. Ct. July 13, 2009), and *MBIA Insurance Corp. v. Credit Suisse Securities (USA)LLC,* 927 N.Y.S. 2d 517 (N.Y. Sup. Ct. 2011).

In *MBIA Insurance v. Countrywide*, the New York Supreme Court stated: "The implied covenant of good faith and fair dealing in the performance of contractual duties 'is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.'" *Id.*at *20 (citations omitted). In that case, the New York trial court concluded that MBIA's allegations were sufficient to state a claim that "'Countrywide exercised its discretion in bad faith to deprive [plaintiff] of the fruits of the agreements and unfairly shifted the risks of the default and delinquencies to MBIA.'" *Id.* at *21-22. Plaintiff omits to mention, however, that the case was reversed on appeal by the Supreme Court of New York, Appellate Division. *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S. 2d 229 (N.Y. App. Div. 2011). The appellate court stated, *id.* at 236:

12

> The motion court should have dismissed in its entirety the cause of action for breach of the implied duty of good faith and fair dealing. Both the claim as pleaded . . . and the claim as upheld by the motion court are duplicative of the breach of contract claims because they arrive from the same facts. . . . The allegation that Countrywide exercised his discretion in bad faith merely restates the contract-based claims that Countrywide failed to abide by industry standards.

In *MBIA Insurance Corp. v. Credit Suisse Securities*, *supra*, 927 N.Y.S. 2d 517, the court dismissed as to one of two defendants the claim for breach of the covenant of good faith and fair dealing, on the ground that it duplicated the breach of contract claim. The court recognized that "causes of action for breach of contract and breach of the covenant of good faith and fair dealing may stand together where the defendant engages in conduct that injures or frustrates the other party's right to receive the fruits of the contractual bargain." *Id.* at 534. In denying the motion to dismiss as to one defendant, the court pointed out that the defendant had "falsely denied having the files MBIA requested and then refused to produce them under a variety of pretexts." *Id.*

Notably, under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance[.]" *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y. 2d 144, 153, 773 N.E. 2d 496, 500 (2002). *See also Smith v. General Acc. Ins. Co.*, 91 N.Y. 2d 648, 652-53, 697 N.E. 2d 168, 170 (1998). As the New York Court of Appeals has explained, "[t]his covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract.'" *511 West 232nd Owners Corp.*, 773 N.E. 2d at 500 (citation omitted). Although the duties of good faith and fair dealing do not create obligations "'inconsistent with other terms of the contractual relationship . . . .,'" *id.* (citation omitted), the duties of good faith and fair dealing "do encompass 'any promises which a reasonable person in the position of the promisee would

be justified in understanding were included.'" *Id.* at 501 (citations omitted).

Notwithstanding the existence of the implied covenant of good faith and fair dealing, the cases interpreting New York law are legion that New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris, supra*, 310 F.3d at 81 (emphasis added). Such a claim is regarded as "redundant" if it is "intrinsically tied to the damages allegedly resulting from a breach of the contract." *Canstar v. J. A. Jones Construction Co.*, 212 A.D. 2d 452, 622 N.Y.S. 2d 730 (N.Y. App. Div. 1995). *See also Ari and Co., Inc. v. Regent Int'l Corp.*, 273 F.Supp. 2d 518, 522-23 (S.D.N.Y. 2003) (concluding that New York law does not recognize a separate cause of action for breach of the implied covenants of good faith and fair dealing when the claims are predicated on the same underlying facts; such a claim is duplicative of the alleged breach of contract claim when the conduct that allegedly violated the implied covenant is also the predicate for the breach; claim for breach of the covenant of good faith must be dismissed if it seeks to recover for obligations that were not explicitly part of the contract, because "to allow the breach of the implied covenant claim to proceed would enable [plaintiff] to create independent obligations beyond the terms of the Agreement."); *New York Univ. v. Continental Ins. Co.*, 87 N.Y. 2d 308, 319, 662 N.E. 2d 763, 770 (1995) (concluding that claim tantamount to a claim of breach of implied covenant of good faith and fair dealing should have been dismissed as duplicative of the breach of contract claim); *American Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D. 3d 423, 426, 894 N.Y.S. 2d 47 (N.Y. App. Div. 2010) (concluding that claim that defendants breached the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the breach of contract claim, as both arose

14

from the same facts); *Logan Advisors, LLC v. Patriarch Partners, LLC*, 879 N.Y.S. 2d 463 (N.Y. App. Div. 2009) (upholding dismissal of claim for breach of implied covenant of good faith and fair dealing because it was duplicative of the breach of contract claim; both claims arose from the same facts); *Skillgames, LLC v. Brody*, 767 N.Y.S. 2d 418 (N.Y. App. Div. 2003) (upholding dismissal of related claim of breach of the implied covenant of good faith and fair dealing).

Here, it is patent that the claims for breach of contract and for breach of the implied covenants are based entirely on the same underlying factual predicates. The claims are, in effect, redundant and duplicative. Therefore, I shall grant the motion to dismiss Count II.[7]

Date: September 7, 2011

                                                                                     /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge

---

[7] As noted, under New York law, a covenant of good faith and fair dealing in the course of contractual performance is implied in all contracts. Therefore, the Court's ruling does not foreclose plaintiff's right to pursue such a breach. I merely hold, consistent with New York law, that such a claim is subsumed within the claim for breach of contract.