**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **JOEL I. SHER, CHAPTER 11 TRUSTEE for TMST, INC.,** f/k/a Thornburg Mortgage, Inc., | \* \* |
| Plaintiff, | \* |
| v. | \* |
| | Civil No. ELH-11-01982 |
| | \* |
| **BARCLAYS CAPITAL, INC.,** | \* |
| Defendant. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**STIPULATED AGREEMENT REGARDING**
**PRESERVATION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION**
**AND OTHER TANGIBLE ITEMS, AND FORMATS FOR PRODUCTION**

WHEREAS, the parties agree that this Stipulated Agreement Regarding Preservation of Documents, Electronically Stored Information and other Tangible Items, and Formats for Production (the "Agreement") shall govern the parties in the above-captioned proceeding (the "Action");

WHEREAS, the parties recognize that certain documents and electronically stored information ("ESI") are relevant to this action;

WHEREAS, the parties have engaged in discussions regarding the preservation and production format of such documents and ESI;

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:

**I.   DEFINITIONS**

A.   "Meta-Data" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such

Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Meta-Data is a subset of ESI.

B. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. Native Files are a subset of ESI.

C. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems, such as a TIFF image.

D. The term "ESI" refers to any electronically stored information in the possession, custody or control of the parties to this action. ESI is to be interpreted broadly to include, without limitation, meta-data and information that is stored in an electronic medium and is retrievable in perceivable form.

E. The term "Document(s) is synonymous and equal in scope to usage of this term in Fed. R. Civ. P. 34(a) and to the terms "[w]ritings and recordings," "photographs," "original" and "duplicate" defined in Fed. R. Evid. 1001. Document means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any medium upon which intelligence or information can be recorded or retrieved-including, but not limited to documents fixed in tangible media or electronically or digitally stored on disk or tape in a native format. This includes, without limitation, all ESI.

F. "Preservation" is to be interpreted in accordance with the Federal Rules of Civil Procedure to accomplish the goal of maintaining the integrity of all documents, ESI, and tangible objects reasonably anticipated to be the subject of discovery under Fed. R. Civ. P. 26, 45, and

56(e) in this Action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

      G.      The term "MBS" refers to the particular mortgage-backed securities that were the subject of the repurchase transactions between the parties at issue in the Complaint.

## II.      DOCUMENT PRESERVATION

      A.      The parties shall, during the pendency of this Action, comply with their duty to preserve all documents, electronically stored information ("ESI"), and tangible objects that may be relevant to this action. Pursuant to Fed. R. Civ. P. 26(b)(1), the relevant information preserved need not be admissible at the trial if the discovery of the documents, ESI, or tangible objects appear reasonably calculated to lead to the discovery of admissible evidence. This duty to preserve extends to documents, ESI, and tangible objects in the possession, custody, and control of the parties to this Action, and any employees or agents reasonably expected to possess materials anticipated to be the subject of discovery in this action ("Custodian(s)"). Nothing in this agreement is intended to broaden or diminish any obligations imposed by the Federal Rules of Civil Procedure.

      B.      The Parties agree that the defendant's obligations to take reasonable steps to preserve documents, ESI, and tangible objects commenced when defendants became aware of the litigation or the potential for litigation, but no later than ten (10) business days after the date that the first complaint related to this Action was served on the defendant; the parties agree that the plaintiff's obligations to take reasonable steps to preserve documents, ESI, and tangible objects commenced on the date of the plaintiff's first involvement in any preparation related to a complaint that is part of this Action; and the parties agree that these preservation obligations

cover the time period between January 1, 2005 and April 1, 2008, except with regard to any documents that might relate to Barclays' holding or disposition of the MBS at issue in this case with CUSIPs 02150WAC7, 073866BM6, and 45669BAA0, for which the time period for preservation shall expire the later of April 1, 2008 or 60 days after Barclays disposed or disposes of each respective MBS.

    C.    The Parties must take reasonable steps to preserve relevant documents in their original condition and ESI in its native format. Such steps include, without limitation:

1. Taking reasonable steps to identify all Custodians;

2. Directing custodians and appropriate IT personnel with possession, custody, and control over relevant documents and ESI to preserve potentially relevant information (This obligation does not require the parties to provide a copy of this Agreement to custodians so long as reasonable steps are taken to inform Custodians of the substantive provisions of this Agreement, as well as their individual obligations thereunder.);

3. Taking reasonable steps to cease all non-routine defragmentation, compression, purging, or reformatting of digital media that may contain electronic data that may be subject to discovery unless all active files containing information within the scope of this Agreement have been copied and preserved;

4. Taking reasonable steps as of the date of this Agreement to preserve the oldest known complete backup of all files reasonably expected to contain potentially relevant information, to the extent that such a backup exists (once this obligation is satisfied, parties may continue to engage in the routine rotation of backup tapes going forward);

5. Taking reasonable steps to preserve in their current state all active files from electronic data sources that contain data that is within the scope of this Agreement;

6. Taking reasonable steps to preserve any existing digital records, transcripts or text files reflecting relevant contents of any voicemail systems owned by the Party; and

7. Taking reasonable steps to preserve all security keys, encryption/decryption information, and policies that exist or are related to any data contemplated by this Agreement for the sole purpose of accessing the data.

    D    Notwithstanding any other provision of this Agreement, a party need not preserve information electronically stored on servers, hard drives, or similar locations not reasonably likely to contain information within the scope of this Agreement.

    E.    Provided that the parties take reasonable steps to comply with this Agreement, the parties will not seek sanctions on a party for failing to provide ESI lost inadvertently or as a result of the routine, good-faith operation of an electronic information system.

    F.    By agreeing to preserve information in accordance with the terms of this Agreement, the parties do not waive any objection to the relevance, discovery, admissibility, or format of production of any document, ESI, or other tangible object.  In particular, the parties agree that by preserving any document, ESI, or other tangible object, a party to this agreement does not concede that such document, ESI, or other tangible object is relevant, discoverable, or admissible, and no party hereto shall use the fact of such preservation in support of an argument that such document, ESI, or other tangible object is relevant, discoverable, or admissible.

**III.**    **PRODUCTION FORMAT OF ESI**

    A.    Responsive documents to be produced as tiff images:  Except as stated in B. below, responsive documents should be produced in the form of black-and-white, single-page, 300 DPI, Group IV .tiff images, and tiff images names endorsed with corresponding Bates Numbers.

    B.    Responsive documents to be produced in native format: Microsoft Excel files, other electronic spreadsheet files, audio or video files (such as audio--.mp3, mpa, wav, or .wma; video---.mpg, .mp4, .wmv, .flv, or .jpg), and other files that cannot be converted to tiff image format should be produced in native format, including all formulae within the cells of the spreadsheet, any hidden rows or columns, and all other metadata contained in the file. All files

produced in native format will have corresponding single page tiff place holder stating: "Document Produced in Native Format." Each Native file will retain its original name.

  C. Load files are to be produced for each responsive document. To the extent practicable and/or available, for each document, load files should include information regarding all custodians from whom the document was collected; the documents file path; text that is extracted from the electronic file, not generated as an OCR file from the .tiff image(s) (and such text shall be provided as a separate load file from the remainder of the information designated in this part C.); as well as: (1) the beginning Bates number (referring to the first page of the document); (2) the ending Bates number (referring to the last page of the document); (3) each document's MD5Hash information; and, in the case of emails with attachments (4) the beginning attachment range number(s) and (5) the ending attachment range number(s), where the "attachment range" records the relationship of the e-mails to their attachments. The attachment range should be recorded from the first page of the first document in the attachment range to the last page of the last document in the attachment range. For e-mails, the load file should also include, to the extent practicable and/or available, header information including: (1) the individual(s) to whom the communication was directed ("To"); (2) the author of the communication ("From"); (3) the recipient(s) of the communication (including all "Cc"s and "Bcc"s); (4) the subject or "re" line of the communication;(5) the date sent; (6) the time sent; (7) the path to the documents for the documents produced in native format ("Native Link"); (8) the Original Name of all files ("File Name"), (9) the File Extension of each file ("File Extension"); (10) the number of pages of each document ("Page Count") and (11) the full internet header for each email. For attachments to emails, the load file should also include the last modified date. For images of hard copy documents, the load file should include, to the extent practicable and/or available, information regarding custodian or other source from which the document was

gathered; the beginning Bates number (referring to the first page of the document); the ending Bates number (referring to the last page of the document) and, to the extent available, the beginning attachment range, the ending attachment range, and page count. For hard copy documents, the load file should also contain text extracted by an OCR generated software. The form of delivery of extracted text/OCR file is a document level .TXT file corresponding to beginning Bates number of each document and placed in folder titled either "Text" or "OCR" accompanying a Summation .LST file.

D. The format for delivery of load files will be standard Concordance .DAT file and corresponding image load files supporting the most recent versions of Concordance, Summation and IPRO for linking TIFF images.

E. The right to request production of any responsive document(s) in their native format (including metadata), other than as already specified in B. and C. above, is expressly reserved, as is the right of the party opposing such production to seek a protective order.

F. The right to request specific documents or electronically stored information in native format, as referenced in E. above, should not be abused, and all such requests must be reasonable and not designed to reach non-relevant material, privileged material, privileged communications or work product.

**IV.  OBJECTIONS TO PRODUCTION OF ESI**

A. A party may object to production of ESI that is not reasonably accessible because of undue burden or cost, and retains all rights to do so provided by the Federal Rules of Civil Procedure or other governing law.

B. Before asserting an objection, the responding party will inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production

would impose an undue burden or is unreasonably costly, and afford the requesting party 10 working days (calendar days minus weekends and state or federal holidays) to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information.

V.  **TIME FRAME FOR SEARCH AND PRODUCTION OF ESI**

   A.   To expedite discovery and to reduce costs, the parties agree that for ESI relating to the negotiation of the Master Repurchase Agreement at issue in this lawsuit or any other information about the outset of the parties' relationship, the parties agree that the time period for production is March 1, 2005 through August 31, 2005. Barclays, however, has preliminarily advised the Trustee that some or all of its ESI from this period in 2005 is inaccessible other than by restoring back-up tapes and may not be reasonably accessible, and thus that it may invoke the process outlined in IV above with regard to such ESI.

   B.   For ESI relating to the MBS at issue in this case with CUSIPs 02150WAC7, 073866BM6, and 45669BAA0, the parties agree that the time period for production is from the date when those MBS became the subject of the repurchase transactions at issue between the parties until the end of the first calendar month after the month in which Barclays disposed or disposes of each respective MBS.

   C.   For ESI relating to any other topic, the time period for production is from January 1, 2007, through December 31, 2007.

   D.   Each party reserves the right to designate, within 30 days of receiving the productions described in A, B and C, above, up to three custodians from whom the opposing party must also search and produce all responsive ESI for the period September 1, 2005 until December 31, 2006, subject to objections based on inaccessibility

E. Each party reserves its rights to make specific requests of the other party to produce additional responsive ESI that relates to the period from January 1, 2005 to April 1, 2008, and each party specifically reserves it right to object thereto. Neither party may argue the other has waived its rights to documents by agreeing to these initial discovery terms. In particular, the parties do not waive their rights to request such ESI or to raising any objection to the relevance, discovery, admissibility, or burden of producing the ESI.

F. Each party agrees to use its best efforts to identify and search the files of the custodians most likely to have information responsive to the other party's document requests. Each party shall provide the other party with a list of the custodians used to respond to document requests.

## VI. CONTINUING OBLIGATIONS

A. To expedite discovery of relevant electronic evidence and reduce costs, the parties' counsel and computer experts will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production of computerized information. This responsibility shall be continuing, unless otherwise ordered by the Court.

B. The parties also agree to negotiate as soon as practicable a mutually acceptable protective order to protect confidential information and to submit that order for consideration and entry by the Court. The parties will address any inadvertent production of privileged information in the context of that protective order.

This Agreement shall continue in full force and effect until order of the Court or until this litigation is terminated by a final judgment.

IT IS SO STIPULATED.

Dated: November 30, 2011

Respectfully submitted,

Mark L. D. Wawro
Stephen D. Susman
Stuart V. Kusin
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston TX 77002-5096
Phone (713) 651-9366
mwawro@susmangodfrey.com
ssusman@susmangodfrey.com
skusin@susmangodfrey.com
*Counsel for Joel I. Sher, Chapter 11 Trustee*

and

　/s/ Daniel J. Zeller
Daniel J. Zeller, Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
36 South Charles Street, 20th Floor
Baltimore MD 21201-3147
Phone (410) 385-0202
djz@shapirosher.com
*Local Counsel for Joel I. Sher, Chapter 11 Trustee*

　/s/ Ruth E. Harlow
Lance Croffoot-Suede
Ruth E. Harlow
Katherine Ryan
LINKLATERS LLP
1345 Avenue of the Americas
New York NY 10105
Telephone:  212-903-9000
Facsimile:  212-903-9100

and

Patricia A. Borenstein
Richard L. Costella
MILES AND STOCKBRIDGE PC
10 Light Street
Baltimore, MD 21201
Telephone:  410-727-6464
Facsimile:  410-385-4700

*Counsel for Barclay's Capital, Inc.*