## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOEL I. SHER, CHAPTER 11 TRUSTEE for TMST, INC., f/k/a Thornburg Mortgage, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil No. ELH-11-01982 |
| BARCLAYS CAPITAL, INC. | * | |
| Defendant. | * | |

### NOTICE OF RULE 30(b)(6) VIDEOTAPED DEPOSITION

TO: Lance Croffoot-Suede, Charles T. Pollack, Paul S. Hessler, Ruth E. Harlow, Linklaters LLP, 1345 Avenue of The Americas, New York, NY 10105

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, beginning at 9:00 a.m. on June 15, 2012, at the offices of Susman Godfrey L.L.P., 15th Floor, 560 Lexington Avenue, New York, NY 10022, the Plaintiff in this action, Joel I. Sher, Chapter 11 Trustee for TMST, Inc., by its counsel, will take the oral deposition of one or more designated representatives able to testify fully as to the topics listed in Exhibit A.

The deposition will be taken before a Notary Public or some other officer authorized by law to administer oaths for use at the trial herein. The above deposition will continue from day to day until completed.

The deposition will be taken before a Certified Court Reporter or some other officer authorized by law to administer oaths for use at trial. The above deposition will be videotaped and will continue from day to day until completed.

Respectfully submitted,

*[signature]*

Mark L. D. Wawro
Stephen D. Susman
Stuart V. Kusin
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston TX 77002-5096
Phone (713) 651-9366
mwawro@susmangodfrey.com
ssusman@susmangodfrey.com
skusin@susmangodfrey.com
*Counsel for Joel I. Sher, Chapter 11 Trustee*

and

*[signature]*

Daniel J. Zeller, Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
36 South Charles Street, 20th Floor
Baltimore MD 21201-3147
Phone (410) 385-0202
djz@shapirosher.com
*Local Counsel for Joel I. Sher, Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

This is to certify that on the 1st day of June, 2012, a true and correct copy of the foregoing instrument was served by first class mail, postage prepaid and email on the following counsel of record:

Lance Croffoot-Suede
Charles T. Pollack
Paul S. Hessler
Ruth E. Harlow
Linklaters LLP
1345 Avenue of the Americas
New York NY 10105

Richard L. Costella, Esq.
Patricia A. Borsenstein, Esq.
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore MD 21202

_____
Mark Wawro

# Exhibit A

## I. DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the topics listed below:

1. The term "MBS" refers to the following mortgage backed securities: ARMT 2007-1, Cusip 007037AB0; CWALT 2007-HY4, Cusip 02150QAK2; CWALT 2007-HY5R, Cusip 02150WAC7; BALTA 2006-R1, Cusip 073866BM6; BSARM 2007-4, Cusip 07401CAV5; CMLTI 2006-AR9, Cusip 17310RAM1; CMLTI 2007-AR4, Cusip 17311WAF4; GSR 2005-AR7, Cusip 362341XG9; INDX 2005-AR29, Cusip 45660LU98; INDX 2007-AR1, Cusip 45669BAA0; SARM 2005-22, Cusip 863579G51; WAMU 2007-HY6, Cusip 92927XAG9; WAMU 2007-HY3, Cusip 933634AA5.

2. "TMST" refers to TMST, Inc., f/k/a Thornburg Mortgage Inc, debtor in the above-referenced litigation, including its officers, directors, officials, employees, agents, and representatives.

3. "You," "your," or "yours" shall mean, unless otherwise specified in a particular request, Barclays Capital Inc. any officer, director, official, employee, agent or representative of Barclays Capital Inc., and each person acting or authorized to act on behalf of Barclays Capital Inc..

4. "MRA" refers to the Master Repurchase Agreement between Barclays and TMST, dated as of June 15, 2005, as modified and supplemented by certain annexes thereto.

5. "Bank (Financing) Book" refers to any accounting book, ledger or other accounting record or financial report that includes all securities that are not actively traded by Barclays, and/or are meant to be held by Barclays until they mature.

6. "Trading Book" refers to any accounting book, ledger, or other accounting record or financial report that includes all securities traded by Barclays in the securities markets.

7. The term "and/or," "or," and "and" are used inclusively, not exclusively.

## II. TOPICS

1. To the extent it did so for any purpose, the values, prices, or marks Barclays placed on each MBS from July 1, 2007 through August 31, 2007.

2. To the extent it determined prices for any of the MBS from July 1, 2007 through August 31, 2007, the method by which Barclays did so, including but not limited to the spreads Barclays used, the means by which Barclays determined what spreads to use, and all other elements Barclays used to determine prices for any of the MBS in that time frame

3. Every "generally recognized source," as that phrase is used in paragraph 2(j) of the MRA, Barclays consulted in connection with pricing any of the MBS from July 1, 2007 through August 31, 2007.

4. The calculation of price or value with respect to the existence of a margin deficit, margin excess, or liquidation value related to the MBS.

5. Your policies, practices, procedures, internal guidelines, external guidelines, and process for valuing or establishing prices for mortgage backed securities.

6. How Barclays determined any Margin Deficit or Margin Excess for the MBS under the MRA up to and including August 14, 2007, including who was involved in making those determinations, whether the people with principal responsibility for making those determinations changed at any time during June, July, or August 2007, the methods Barclays used in making those determinations, and the manner in which those determinations were documented within Barclays and communicated to TMST.

## Mark Wawro

| | |
|---|---|
| **From:** | Mark Wawro |
| **Sent:** | Tuesday, June 05, 2012 1:50 PM |
| **To:** | Harlow, Ruth |
| **Cc:** | Linklaters - Katie Ryan; Linklaters - Lance Croffoot-Suede; Miles - Patricia Bornstein Jefferson; Miles - Richard L. Costella |
| **Subject:** | Re: Barclays' Objections to Rule 30(b)(6) Deposition Noticed for June 15, 2012 |
| **Attachments:** | Notice of Rule 30(b)(6) Videotaped Deposition and Exhibit A.PDF |

June 5, 2012

Dear Ruth:

In response to your June 4 letter, I am available to meet and confer with you any time tomorrow, June 6. Please let me know what time you would prefer to do this.

In advance of that discussion, let me briefly set out our views on the subject of the 30(b)(6) deposition we have requested. I attach our deposition notice. The six topics listed in our notice all concern how Barclays valued, priced, or set marks for the specific mortgage backed securities at issue in this case. That is a core issue. Our breach of contract claim alleges, among other things, that Barclays issued margin calls in the absence of a margin deficit and failed to give Thornburg appropriate credit for the value of the securities it retained when it defaulted Thornburg. A fundamental fact question in the case is how Barclays valued the securities, both when it made margin calls and when it credited Thornburg for the value of those securities upon the alleged default.

As your letter recognizes, we want to start with a 30(b)(6) deposition on these core topics "to save time." Our scheduling order allots us 40 hours of depositions. We want to know how Barclays valued the mortgage backed securities at the outset of oral discovery, and while we could take a number of fact depositions in an effort to locate the right person to ask, your letter implies that the right person may no longer be a Barclays employee (because you refer to the burden on Barclays of providing "the newly-educated knowledge of one or a very limited number of live corporate witnesses"). Our approach is sensible and efficient.

Turning to your specific objections to the six listed topics, here are our views.

1. You object that the topic of the values Barclays placed on the thirteen securities at issue during the months of July and August 2007 can be better obtained by a document request or interrogatory. Of course, we have already served document requests and interrogatories, and are now looking for a live witness who can educate us further on the information Barclays has given or will give us.

2. You object that the topic of the method Barclays used to determine prices for the securities at issue during July and August 2007 is vague and ambiguous in its use of the terms "determined prices," "method," and "spread." "Spread," of course, is a pretty common term with respect to this subject and is used in documents from Barclays as well as Thornburg when discussing the pricing of these securities. I do not understand what is truly unclear about "determined prices" or "method." You also object because of Barclays' need to aggregate all the knowledge of relevant fact witnesses into a single corporate

1

witness. Of course, as you pointed out to me when we discussed this on May 30, Barclays can designate more than one witness if needed; and, in any event, Barclays only consulted three people to provide all of its interrogatory answers, including those directed to how Barclays determined prices for the securities.

3. You object that the topic about the generally recognized source or sources (as that term is used in the parties' contract) that Barclays consulted in order to price the securities is something you already told us in answer to our interrogatory number 3. You told us there that Barclays only consulted its own Residential Mortgage Backed Securities trading desk. We wish to explore that further with a knowledgeable corporate representative witness.

4. You object that the topic about the calculation of price or value with respect to the existence of a margin deficit, margin excess, or liquidation value of the thirteen securities "is irrelevant to and not reasonably calculated to lead to relevant evidence in the present action." In response, I direct you to the Court's Memorandum Opinion of September 7, 2011, at page 8: "Suit is premised on a dispute as to whether Barclays' asset valuations, margin calls, Notice of Default, and liquidation of assets complied with the MRA." How Barclays made these calculations is a core issue here.

5. You object that the topic about Barclays' policies with respect to valuing or pricing mortgage backed securities is too broad because "valuing and pricing of non-agency RMBS is at issue in this case," whereas this topic seeks a witness knowledgeable about Barclays policies with respect to pricing any mortgage backed securities. In passing, I note that your argument here about what is at issue in this case seems inconsistent with your objection to our topic 4, discussed above. In addition, to the extent Barclays' policies on valuing non-agency RMBS truly are different from its policies for other MBS, we would like to understand why and how because those differences may illuminate the core issue of the validity, accuracy, or reliability of values Barclays ascribed to the securities at issue here.

6. You object that the topic about how Barclays determined margin calls under the MRA in this case is hard to understand and respond to. For clarification about the specific points you mention, the time frame to which it relates is given by its reference to "the MBS under the MRA." The start date is the date of the earliest transactions with Thornburg on the thirteen securities, which as you know was February 22, 2007; and the end date is stated by the topic as August 14, 2007. The terms "Margin Deficit" and "Margin Excess" are defined in the MRA, and by capitalizing the words and referring in the topic to "for the MBS under the MRA," we intended you to understand that we meant those terms as they are used in the parties' contract. If it makes it clearer, you can treat "for the MBS" as meaning "involving the MBS."

As you acknowledge in your letter, we gave you these topics on May 18 and asked you to provide a date when a witness or witnesses could be provided. I asked for dates sometime during the first two weeks of June. On June 1, you told me you would not be able to respond to my request until early this week, but you had also told me on May 30 that June 13 and June 15 were dates on which both in-house and outside counsel were available for a deposition in the case. Accordingly, when you told me on June 1 that the other deponent we were discussing, Mr. Wray, was not available on either of those days, we noticed the 30(b)(6) deposition for the later of those two days to be certain you had reasonable, formal notice. Under the Discovery Guidelines of the Local Rules of the Court, that fourteen-day notice was reasonable notice; and, of course, we effectively gave you notice on May 18, and we set the deposition on a date you had already indicated was agreeable to inside and outside counsel as a deposition day.

Please let me know when tomorrow you can meet and confer again.

Very truly yours,

Mark Wawro


Mark L.D. Wawro I Partner I Susman Godfrey LLP
**Houston I Dallas I New York I Los Angeles I Seattle**
Office: 713.653.7804 I fax: 713.654.6666
mwawro@susmangodfrey.com I **Mark Wawro Bio** I **Susman Godfrey Website**
This communication may contain confidential or privileged information.
If you have received this email in error, please destroy it.

## Mark Wawro

| | |
|---|---|
| **From:** | Mark Wawro |
| **Sent:** | Wednesday, June 06, 2012 4:43 PM |
| **To:** | Harlow, Ruth; Linklaters - Katie Ryan; Linklaters - Lance Croffoot-Suede; Miles - Patricia Bornstein Jefferson; Miles - Richard L. Costella |
| **Cc:** | Daniel Zeller; Joel Sher; Judith Orihuela; Mark Wawro; Matt Behncke; Sandee Krueger; Steve Susman; Stuart V. Kusin |
| **Subject:** | Meet and Confer regarding 30(b)(6) Deposition Noticed for June 15 |

**Dear Ruth,**

I am sorry we could not come to a resolution during our discussion this afternoon concerning the 30(b)(6) deposition we noticed. I will not describe what each of us said during the call, but I will memorialize the undertakings I made.

1. With respect to the topics, the reference to "the MBS" means the MBS as defined in the first definition of the notice. In other words, we are not asking for a witness who can testify about valuing the interest rate swaps or options embedded in the repo transactions between the parties, but only about valuing, pricing, or setting marks for the securities themselves.

2. You suggested that the question of how Barclays documented and communicated its determinations, referred to at the end of topic 6, might be information that the person testifying about the balance of that topic would not have. If that is the case with respect to topic 6 (or with respect to any other topic), Barclays can designate a different person for that subpart if needed.

3. If you prefer, I will take the deposition of Mr. Chung, individually and not as your corporate representative, if you can make him available the second week of June. My preference is for the 30(b)(6) deposition as it has been noticed, but since you indicated that Mr. Chung was one of the people with knowledge about the topics I am interested in, I will proceed with him as a compromise if Barclays will make him available then.

Regards,

Mark

Mark L.D. Wawro I Partner I Susman Godfrey LLP
**Houston I Dallas I New York I Los Angeles I Seattle**

1

## Mark Wawro

| | |
|---|---|
| **From:** | Mark Wawro |
| **Sent:** | Friday, June 08, 2012 12:09 PM |
| **To:** | 'Harlow, Ruth'; Croffoot-Suede, Lance; Miles - Patricia Bornstein Jefferson; Miles - Richard L. Costella |
| **Cc:** | Daniel Zeller; Joel Sher; Judith Orihuela; Matt Behncke; Sandee Krueger; Steve Susman; Stuart V. Kusin |
| **Subject:** | RE: Meet and Confer regarding 30(b)(6) Deposition Noticed for June 15 |

**Dear Ruth,**

**Your proposal is not acceptable.**

**We are entitled to get Barclays' corporate position on the key pricing and valuation issue in this case at the outset of oral discovery. We think that may obviate the need to spend additional time on the depositions of individuals. I was willing to compromise by taking Mr. Chung on June 15 if you were willing to make him available then. I am not willing to abandon our discovery plan and also defer Mr. Chung's deposition for another month.**

**Accordingly, we plan to proceed with the 30(b)(6) deposition as noticed. If you would like to discuss this with the Court, please let me know when you would like to do so.**

**Regards,**

**Mark**

Mark L.D. Wawro I Partner I Susman Godfrey LLP
**Houston I Dallas I New York I Los Angeles I Seattle**
Office: 713.653.7804 I fax: 713.654.6666
mwawro@susmangodfrey.com I Mark Wawro Bio I Susman Godfrey Website
This communication may contain confidential or privileged information.
If you have received this email in error, please destroy it.

**From:** Harlow, Ruth [mailto:ruth.harlow@linklaters.com]
**Sent:** Friday, June 08, 2012 11:56 AM
**To:** Mark Wawro; Croffoot-Suede, Lance; Miles - Patricia Bornstein Jefferson; Miles - Richard L. Costella
**Cc:** Daniel Zeller; Joel Sher; Judith Orihuela; Matt Behncke; Sandee Krueger; Steve Susman; Stuart V. Kusin
**Subject:** RE: Meet and Confer regarding 30(b)(6) Deposition Noticed for June 15

Mark —

As we discussed on Wednesday evening, Barclays continues its objections to the 30(b)(6) notice because it is a tactical effort to force Barclays to expend unnecessary resources and to unnecessarily rush the start of depositions in the case, its topics are overlapping and unclear (and some are wholly improper for this form of discovery), and we have three fact

1