# Linklaters

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9000
Facsimile (+1) 212 903 9100
Direct Line 212-903-9210
Direct Fax 212-903-9100
ruth.harlow@linklaters.com

Mark Wawro
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
**By Email**                                                                                                   June 4, 2012

### Re: Objections to Rule 30(b)(6) Deposition Noticed for June 15, 2012

Dear Mark:

Barclays Capital Inc. ("Barclays") hereby objects to the Rule 30(b)(6) deposition you noticed on June 1 in *Joel I Sher, Chapter 11 Trustee for TMST, Inc. ("TMST") v. Barclays*, Civil No. ELH-11-01982 (the "Rule 30(b)(6) Notice"). In particular, Barclays objects to your tactical use of the Rule 30(b)(6) Notice as a transparent attempt to force Barclays to shoulder the unnecessary time and expense of aggregating the knowledge of readily available fact witnesses at this early stage of discovery. At this time, prior to Plaintiff taking even one fact witness deposition let alone taking enough testimony to properly gauge the necessity of, and the appropriate scope for, Rule 30(b)(6) testimony, Plaintiff's request seems unreasonable and imposes significant and unnecessary burdens on Barclays. Without waiving any potential responses and objections, Barclays suggests that discussion of the Rule 30(b)(6) Notice and the Topics set forth therein is better suited for a later date, after the completion of the bulk of the fact witness depositions likely to occur in this case. We ask that you withdraw the Notice. Nonetheless, in the event you disagree, Barclays herein objects to each of the noticed topics and to the date proposed for deposition in the Rule 30(b)(6) Notice.

#### Objection to Tactical Use

During our discussions about the Justin Wray and a possible 30(b)(6) deposition on Wednesday, May 30, I questioned the urgency with which you sought to schedule the 30(b)(6) deposition, and noted that at this point each side would not have difficulty in scheduling and completing its limited, 40 hours of total deposition time (excluding any experts) before the end of August. You responded that the 40-hour limit was part of your motivation in pressing for a Rule 30(b)(6) deposition first, before any fact depositions other than Mr. Wray's.

This tactical use of the Rule 30(b)(6) vehicle to save time, and to force Barclays to expend resources to consolidate otherwise easily-discoverable facts into the newly-educated knowledge of one or a very limited number of live corporate witnesses, imposes unnecessary burdens on Barclays and is inconsistent with the purpose of Rule 30(b)(6). The information requested in the Rule 30(b)(6) Notice has either

Linklaters LLP is a multinational limited liability partnership registered in England and Wales with registered number OC326345 including solicitors of the Senior Courts of England and Wales, members of the New York Bar and foreign legal consultants in New York. It is a law firm authorised and regulated by the Solicitors Regulation Authority. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ, England or on www.linklaters.com.

Please refer to www.linklaters.com/regulation for important information on our regulatory position.

Exhibit A to Supplemental Discovery Dispute Letter

# Linklaters

already been provided to you, or can easily be obtained by serving interrogatories, document requests, or through ordinary fact depositions of the relevant persons on the residential mortgage-backed securities ("RMBS") trading desk who have been previously identified for you. Rule 30(b)(6) depositions were not intended to help parties flout or evade reasonable discovery limitations, nor to supplant more appropriate discovery tools that would give TMST the same access to information while imposing far less burden on Barclays.

**Objections to Topics**

In addition to Barclays more general objection to the Rule 30(b)(6) Notice described above, Barclays objects to the Topics noted therein for a number of reasons, including that the Topics are: (1) unreasonably cumulative and duplicative of other discovery; (2) seeking information that can be successfully obtained through more efficient means that would be less burdensome and more cost-effective for Barclays; and (3) ambiguous, confusing and overbroad, in light of the issues in this case. See Fed. R. Civ. P. 26(b)(2)(C), 26(c)(1), 30(b)(6); see also Guideline 5 of the Discovery Guidelines of the United States District Court for the District of Maryland. In particular, Barclays' objections to the Topics include but are not necessarily limited to the following:

1. Barclays objects to Topic 1 because it requests information that can be obtained far more efficiently by serving Barclays with a document request and/or an interrogatory. Requesting live testimony pursuant to Rule 30(b)(6) regarding the "values, prices, or marks Barclays placed on" 13 securities, for any purpose, at any time from July 1, 2007 through August 31, 2007 is unreasonable and unduly burdensome, especially when other, more direct means to obtain such "values, prices, or marks" are plainly available. In addition, Barclays objects to the phrase "for any purpose" as it is vague and ambiguous and, without further context or specificity, appears to seek information that is irrelevant to and not reasonably calculated to lead to relevant evidence in the present action.[1]

2. Barclays objects to Topic 2 because it is vague and ambiguous, including in its use of the phrase "determined prices," and the terms "method" and "spreads." Moreover, particularly in the context of this case, it is unclear whether you are referencing marking the MBS for purposes of Barclays' internal pricing and/or its margin calls, or you also mean obtaining or making bids on, or participating in sales of, the MBS. In addition, Barclays objects to Topic 2 because it is unduly burdensome, costly, and inefficient to require Barclays to aggregate all the knowledge on this topic of the relevant fact witnesses available for deposition, as identified in Barclays' responses to interrogatories and in its document production, and to educate instead a single corporate witness without any previous effort on TMST's part to obtain such factual testimony.

3. Barclays objects to Topic 3 because it employs a legal contention, misstates the terms of the MRA, is more appropriately the subject of an interrogatory, and is duplicative of a request included in TMST's previously served Interrogatories (Interrogatory No.3) to which Barclays has already responded. Contrary to your description in Topic 3, the MRA does not refer to "consulting" generally recognized

---

[1] Barclays also specifically objects to the Notice and each of Topics 1-6 to the extent that, by virtue of the word "Barclays," the purported definition of "You," or otherwise, they seek to impose obligations for testimony by the named organization in the Notice, Barclays Capital Inc., that extend beyond the scope of testimony required by Rule 30(b)(6). Similarly, Barclays also specifically objects to the Notice and each of Topics 1-6 to the extent they might seek information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or protection from disclosure.

# Linklaters

sources "in connection with pricing," but instead refers to "obtaining" prices from generally recognized sources. Thus, this topic is not only essentially a contention interrogatory, but reflects a distortion of the applicable contract.

4. Barclays objects to Topic 4 as overbroad, vague, and ambiguous, and because it appears to seek information that is irrelevant to and not reasonably calculated to lead to relevant evidence in the present action. In addition, some of the information sought appears to be duplicative of Topics 2 or 6, and duplicative of information already provided to TMST through document production and interrogatory responses. In particular, Barclays objects to the broad and uncertain nature of Topic 4 because it does not limit the topic to any specific time period, to any counterparty, to any type of transaction, or to any type of governing contract or particular contractual relationship.

5. Barclays objects to Topic 5 because it is overbroad, requests information irrelevant to and not reasonably calculated to lead to information relevant to TMST's underlying claims, and is duplicative of TMST's Document Request No. 2. In particular, this topic is too broad given that valuing and pricing of non-agency RMBS is at issue in this case, whereas this topic seeks information, without qualification, related to the valuing and pricing for all mortgage backed securities. In addition, this topic lacks any time period and other parameters that are necessary to define discoverable information for purposes of this matter. To the extent Topic 5 seeks properly discoverable information, requesting testimony pursuant to the Rule 30(b)(6) Notice on this topic is unreasonable given that Barclays could satisfy this request far more efficiently with document production. To the extent that Topic 5 seeks testimony about the specific practices and processes employed by Barclays, as distinguished from Barclays' formal policies, this topic overlaps with and is duplicative of Topics 2 and 6.

6. Barclays objects to Topic 6 because it is overbroad, compound, ambiguous, and seeks information previously provided by Barclays either in response to TMST's interrogatories or document requests, or in connection with margin call communications at the time the margin calls were made to TMST. This topic is imprecise and confusing because it incorporates a run-on request for a variety of information related to pricing, personnel, record-keeping, and communication issues. In addition, it contains incomplete information with regard to the timeframe it relates to, and appears to be overbroad in time. Moreover, it is also confusing in its reference to "methods" and to "Margin Deficit or Margin Excess for the MBS under the MRA." The topic does not define those terms, other than MBS and MRA, and its discussion of margin deficit or margin excess "for the MBS" appears to be inconsistent with the governing definition of Margin Deficit and Margin Excess under the MRA. Barclays could not prepare a witness to testify on this topic without significant clarification. To the extent Topic 6 seeks information beyond that previously produced by Barclays, in particular with regard to the personnel (or changes to the personnel) involved in making margin determinations with regard to the TMST transactions during the relevant time period, that information should be sought through the less burdensome means of an interrogatory. To the extent Topic 6 overlaps with Topic 2, the information sought is, again, available from the same fact witnesses.

### Objection to Timing

Were clear and appropriate topics defined, Barclays would need sufficient time to comply with its obligations under Rule 30(b)(6) – primarily, to make a diligent inquiry to identify the individual or individuals best suited to testify on the noticed topics, to educate the individual(s) with information gathered from various employees and documents, and to otherwise prepare them with the background and composite knowledge necessary to testify as a corporate representative on Barclays' behalf. Your

# Linklaters

delivery of the Rule 30(b)(6) Notice late in the day on June 1, 2012, requesting testimony on June 15, 2012 is wholly unreasonable because it does not allow Barclays sufficient time to undertake the necessary inquiry and preparation.[2]

The steps Barclays is **required to undertake** to satisfy its obligations and provide Rule 30(b)(6) testimony cannot, contrary to your apparent assumptions, be accomplished in an institution of Barclays' size and complexity within a matter of days or a few short weeks. To date, the parties have proceeded cooperatively to work out scheduling issues. Until now, neither party has ever suggested that a fourteen-day notice period is adequate for deposition scheduling purposes, even for ordinary fact witnesses, given the nuanced facts, complex entities, and long-past time period involved here. Less than two weeks notice is plainly insufficient for scheduling the requested Rule 30(b)(6) testimony.

We are hopeful that the parties can resolve these issues without intervention by the Court. Please let me know when you are available to meet and confer about these objections.

Yours sincerely,

Ruth E. Harlow
Counsel for Barclays Capital Inc.

---

[2] On the afternoon of Friday, May 18, you had earlier made an informal request for a Rule 30(b)(6) deposition on the topics in the Notice. In the two weeks between the date of your request and the date you served the Rule 30(b)(6) Notice, which included the three-day Memorial Day weekend, I discussed the request with my client. On the morning of June 1, when confirming the date for the fact deposition of Justin Wray, I told you that I would be able to respond to your informal Rule 30(b)(6) request early the following week. Nonetheless, rather than continuing our mutual efforts to move forward, you elected to serve the formal Rule 30(b)(6) Notice later that same day.