IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOEL I. SHER, CHAPTER 11 TRUSTEE for TMST, INC., f/k/a Thornburg Mortgage, Inc. | * * |
| Plaintiff | * Civil No. ELH-11-1982 |
| v. | * |
| BARCLAYS CAPITAL INC., | * |
| Defendant. | * |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Now pending before this Court is a discovery dispute regarding the production of a document referred to by the parties as the "Petrush Spreadsheet." This spreadsheet was inadvertently produced to the defendant, Barclays Capital, Inc. ("Barclays"), by the plaintiff, Joel I. Sher, Chapter 11 Trustee for TMST, Inc., f/k/a Thornburg Mortgage, Inc. ("TMST"), and then "clawed back"[1] pursuant to an agreement between the parties. Barclays contends that the Petrush Spreadsheet is not protected from disclosure and has filed a motion to compel its production after good faith efforts by both parties to resolve this dispute failed.

This Memorandum Opinion[2] addresses: (1) Barclays' Motion to Compel Production of Documents Withheld on the Basis of the Work-Product Doctrine dated March 1, 2013 (ECF No. 69-1); (2) TMST's Opposition to Barclays' Motion to Compel dated March 22, 2013 (ECF No. 69-2); (3) Barclays' Reply Memorandum of Law in Support of Barclays' Motion to Compel

---

[1] The term derives from "clawback" agreements, which allow a producing party to retract privileged documents that have been inadvertently produced to the receiving party during discovery. *See* Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502.

[2] This case was referred to the undersigned by Judge Hollander for resolution of Barclays' Motion to Compel. ECF No. 72.

dated April 10, 2013 (ECF No. 69-3); and (4) TMST's Sur-Reply to Barclays' Motion to Compel filed on May 28, 2013 (ECF No. 75). Pursuant to Local Rule 104.7, Barclays has certified that counsel have conferred regarding the discovery dispute. ECF No. 69. The Court expressly notes that the issues have been well briefed by the parties and finds that no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Barclays' Motion to Compel is **DENIED**. This Memorandum Opinion disposes of ECF Nos. 69 and 75.

## I. BACKGROUND

This lawsuit is based on a Master Repurchase Agreement ("MRA") between Barclays and TMST, a real estate investment trust that focused on residential mortgage-backed securities ("MBS"). ECF No. 69-1 at 5. The MRA governed "individual repurchase transactions," allowing TMST to temporarily finance its purchase of securities through loans from Barclays. *Id.* The transactions were the "economic equivalent of a secured loan" (ECF No. 69-1 at 5); Barclays would hold the purchased securities as collateral until TMST effectively repurchased the securities by repaying the loans with interest on a specified date. ECF No. 69-1 at 5-7. The MRA allowed either TMST or Barclays to make margin calls "at any time" if the market value of the securities serving as collateral became less than or exceeded the designated repurchase price by more than the agreed upon "margin amount." ECF No. 69-1 at 6.

At the beginning of August 2007, seven repurchase transactions were outstanding under the MRA. *Id.* These transactions represented 13 MBS, valued at approximately $2.7 billion. ECF No. 69-1 at 6. When the value of those securities began to decline below the margin amount, Barclays issued a series of margin calls and declared an event of default on August 14, 2007. *Id.* Barclays claims it declared the default because TMST failed to satisfy its duty to meet the margin call. *Id.* TMST claims Barclays did not provide "the contractually mandated time to

contest or meet the call." ECF No. 7 at 9. After issuing a Notice of Default, Barclays disposed of TMST's collateral by liquidating some of the MBS assets and taking some of those assets into its own inventory. ECF Nos. 69-1 at 6 & 69-2 at 5. TMST alleges that Barclays failed to liquidate the securities at "reasonably satisfactory prices or otherwise in a commercially reasonable manner." ECF Nos. 7 at 11 & 69-2 at 6-7.

TMST disputed the values Barclays received during the liquidation as soon as Barclays provided the results (ECF No. 69-2 at 6), and in September 2007, TMST hired Heller Ehrman ("Outside Counsel") to determine whether TMST had any potential causes of action against Barclays. ECF No. 75 at 1. Outside Counsel requested that TMST analyze the liquidation prices Barclays received by comparing those prices to the sales of comparable securities on August 14, 2007. ECF No. 69-2 at 6. Dan Petrush, a TMST employee ("Mr. Petrush"), completed the analysis requested by Outside Counsel, compiled the data into a spreadsheet, and sent that spreadsheet ("the Petrush Spreadsheet") to TMST's CFO, Clay Simmons, in an email titled "At the Request of Counsel." ECF No. 69-2 at 8. Mr. Simmons then forwarded the spreadsheet to Robert Badal, the partner at Heller Ehrman handling the matter. *Id.*

During discovery, TMST inadvertently produced several versions of the Petrush Spreadsheet to Barclays. ECF No. 69-1 at 328 & 69-2 at 8. Barclays noted the spreadsheet's header, "At the Request of Counsel," and alerted TMST that it might have been inadvertently produced. *Id.* TMST agreed and clawed back the spreadsheet. Upon the subsequent discovery of several other versions of the spreadsheet, Barclays provided similar notice to TMST of the potentially inadvertent production. ECF Nos. 69-1 at 331 & 69-2 at 9. This time, however, Barclays claimed that it had a substantial need for the document. ECF No. 69-1 at 331. TMST

clawed back those versions as well, asserting that the spreadsheet was protected from disclosure by the work-product doctrine. ECF No. 69-1 at 333.

After deposing Mr. Petrush, Barclays made another request for the documents from TMST, and TMST again asserted the work-product doctrine. After good faith efforts of the parties were not successful in resolving the dispute, Barclays filed a Motion to Compel. ECF No. 69-1. It contends that the Petrush Spreadsheet is not protected by the work-product privilege because it is an ordinary business document. Alternatively, Barclays argues that even if TMST has appropriately asserted the work-product doctrine, Barclays' substantial need for the Petrush Spreadsheet overrides that privilege. ECF No. 69-1 at 5. It claims that, because Mr. Petrush does not recall the details of the work he completed on the spreadsheet, the Petrush Spreadsheet is the only way Barclays can determine how TMST calculated its losses. Barclays further asserts that this knowledge is essential to defending itself against TMST's allegations, particularly with respect to TMST's alleged damages. *See* ECF No. 69-3.

## II. DISCUSSION

Rule 26(b) of the Federal Rules of Civil Procedure establishes the framework for the work-product doctrine and forms the foundation for resolving this discovery dispute. In pertinent part, the rule provides that "ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation" unless that party "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

The Court finds that the Petrush Spreadsheet was prepared in anticipation of litigation. Barclays argues that, because the calculations performed for the spreadsheet involved analysis that TMST would ordinarily perform to determine its losses, the Petrush Spreadsheet must be

4

considered an ordinary business document rather than a privileged work product. The Court disagrees. In determining whether a document was prepared in anticipation of litigation, the Fourth Circuit has adopted the "because of" test outlined in *National Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). *See also Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co.*, No. ELH-09-1893, 2011 WL 1466428, at *7 (D. Md. April 15, 2011). The "because of" test asks "whether, in light of the nature of the document and the factual situation in that particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *National Union*, 967 F.2d at 985. Documents prepared in the "ordinary course of business" do not fall within the definition of having been prepared in "anticipation of litigation." *Id.; See also American Piledriving Equip., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. ELH-11-01404, 2011 WL 5402441, at *3 (D. Md. Nov. 7, 2011) (finding that business documents, such as purchase orders and rental agreements, created in the regular course of business were the "sort of business records" that did not meet the "because of" test).

Applying the "because of" test in this case, the nature of the Petrush Spreadsheet and the facts surrounding its creation indicate that it was prepared "because of the prospect of litigation." *See National Union*, 967 F.2d at 985. "The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *National Union*, 967 F.2d at 984; *American Piledriving*, 2011 WL 5402441 at *3. It is clear that litigation by TMST against Barclays was being pursued at the time the Petrush Spreadsheet was created. TMST had retained Outside Counsel in September 2007, before the creation of the Petrush Spreadsheet. ECF Nos. 69-2 at 11 & 75 at 2. The spreadsheet has a header containing the phrase "At the Request of

5

Counsel."³ ECF No. 69-1 at 5. When Petrush emailed the completed document to TMST's CFO, his email was titled "At the Request of Counsel," and the CFO, within ten minutes of receiving this email, forwarded it to the TMST's retained Outside Counsel.⁴

Having established that the Petrush Spreadsheet was created because of the prospect of litigation, it must be determined whether Barclays has established the substantial need and undue hardship required under Rule 26(b) to override TMST's work product privilege. *See* Fed. R. Civ. P. 26(b)(3)(A). The Court finds that Barclays has failed to do so.

The Fourth Circuit has generally analyzed the work product privilege in two contexts: fact work product and opinion work product. *In re Grand Jury Proceedings, Thursday Special Grand Jury September Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994). Fact work product, which consists of documents that do not contain the attorney's mental impressions, may be obtained "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings # 5*, 401 F.3d 247, 250 (4th Cir. 2005). Opinion work product consists of "mental impressions, conclusions, and opinions or legal theories of an attorney or other representative of a party concerning litigation." *Wagner v. St. Paul Fire & Marine Ins. Co*., 238 F.R.D. 418, 425 (N.D.W. Va. 2006). It enjoys the greater special protections of Rule 26(b)(3)(B). *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-501, 2010 WL 5125447, at *12 (D. Md. Dec. 9, 2010) (finding opinion work product was not subject to discovery because of Rule 26(b)(3)(B)'s "special protection"). "If

---

³ This header is what initially led Barclays to believe the document had been inadvertently produced and to notify TMST of the production.

⁴ Plaintiff provided the Court with a letter for *in camera* review that contained the unredacted version of ECF No. 69-2. I have reviewed TMST's *ex parte* submissions and am satisfied that the emails and other communications referenced therein further substantiate TMST's assertion that the Petrush Spreadsheet was prepared in anticipation of litigation.

material constitutes opinion work product, it is absolutely immune from discovery whether it was actually prepared by the attorney or another representative of the party." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997) (internal quotations omitted).

The Petrush Spreadsheet is opinion work product. The Fourth Circuit has previously found that the work of choosing and compiling certain records constitutes opinion work product. *See Allen*, 106 F.3d at 608. In *Allen*, the court held that while employment records themselves were not protected from disclosure, a party was not permitted to discover which records the opposing party's attorney had selected or the manner by which that attorney had arranged those records in her preparation for litigation. *Id.* In a factually similar case, the Eastern District of Pennsylvania held that a party could not compel production of the trending methods and non-quantitative factors that opposing counsel had used in compiling their data. *Georgine v. Amchem Prods., Inc.*, No. 93-0215, 1994 WL 502475 (E.D. Pa. Sept. 2, 1994). The court reasoned that the party seeking production was asking the court to permit discovery of the opposing counsel's "thought process in undertaking to evaluate the raw data and arrive at his recommendations." *Id.* at *2. Similarly, Barclays seeks to discover the thought process behind the creation of the Petrush Spreadsheet.[5] Like the documents deemed undiscoverable in *Allen* and *Georgine*, the Petrush Spreadsheet is not simply a collection of facts, but rather a comprehensive opinion work product that evolved out of TMST's specific choices and thought processes concerning litigation against Barclays. As such, it is protected from discovery by Barclays. *See Allen*, 106 F.3d at 607.

Even if the Court concluded that the Petrush Spreadsheet is fact work product, and thus discoverable when substantial need and undue hardship are established, the Court would still

---

[5] The Court draws this conclusion from Barclays' argument in its Reply. Barclays contends that it "cannot . . . simply attempt to repeat the calculations undertaken by Mr. Petrush" because "Barclays was not a party to the loss calculation exercise conducted by TMST and [its] own calculations cannot be said to be a substitute for TMST's." ECF No. 69-3 at 10-11.

7

deny Barclays' Motion to Compel. As explained in *National Union*, "immunity for [fact work product] is little more than an anti-freeloader rule." 967 F.2d at 985. The policy behind this doctrine is to encourage each party to prepare independently. *Id.* Although this policy may be outweighed when a party demonstrates substantial need and undue hardship in obtaining the information elsewhere, that is not the case here. In determining the existence of substantial need, courts have considered: "(1) importance of the materials to the party seeking them for case preparation; (2) the difficulty the party will have obtaining them by other means; and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 608-09 (E.D. Va. 2010) (internal quotations omitted).

Barclays has received all of the underlying comparable sales data that TMST used to compile the Petrush Spreadsheet. It argues that because Mr. Petrush can no longer specifically recall the work that he did in preparation of the document, the production of the Petrush Spreadsheet is necessary so Barclays can understand how TMST calculated their losses and for Barclays to be able to defend itself against TMST's allegations. However, although Mr. Petrush did not explain at his deposition how the specific comparable sales were selected, he did outline how the calculations were generally conducted. ECF No. 69-2 at 17. Both parties, in their submissions, provide the explanation Petrush offered in his deposition:

> That's a matter of opinion. You look at—like I've said you look at the characteristics of each bond. You look at something with similar maturities, similar structure, similar credit characteristics, similar credit support, similar delinquency performance, and see, okay, this is something—is it an apple or is it an orange. Okay. It's an apple. Where are apples being priced today, where are oranges being priced today, where are bananas or cherries or something else being priced today. And you sort of—you think in terms of the different types of collateral and the different types of bonds outstanding and you look for similar things to make an argument.

*Id*. In light of the fact that Barclays not only has the data used to compile the Petrush Spreadsheet, but also more than a general idea of the calculation process Mr. Petrush used to prepare it for TMST's counsel, the Court finds that the substantial need factors do not favor Barclays.

In sum, this Court finds that the Petrush Spreadsheet is opinion work product protected under Rule 26(b)(3)(A) as it was prepared in anticipation of litigation and because the work product contains TMST's thought processes and theories relevant to the litigation. Even if the Court were to assume that the Petrush Spreadsheet was fact work product, Barclays has not established sufficient need or hardship to override the work-product privilege.

## III. CONCLUSION

For the reasons stated above, Barclays' Motion to Compel Production of Documents Withheld on the Basis of Work-Product Doctrine (ECF No. 69) is **DENIED**. A separate Order accompanies this Memorandum Opinion.

Date: June 26, 2013 /s/
Timothy J. Sullivan
United States Magistrate Judge